IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BARBARA MURPHY BROWN, | ) | |
| | ) | |
| Debtor/Appellant | ) | |
| | ) | |
| v. | ) | 1:17-cv-565 (LMB/JFA) |
| | ) | |
| THOMAS P. GORMAN, | ) | On Appeal from |
| | ) | BK NO. 17-10180-KHK |
| Trustee/Appellee. | ) | in the United States |
| | ) | Bankruptcy Court for the |
| | ) | Eastern District of Virginia |
| | ) | |

## MEMORANDUM OPINION

After the Court heard oral argument from the parties on appellant Barbara Murphy

Brown's ("Brown" or "appellant") appeal of the bankruptcy court's dismissal of her Chapter 13

proceeding, the dismissal was affirmed. Brown has appealed that oral ruling. This Memorandum

Opinion more fully explains the basis for the Court's decision.

## I.    BACKGROUND

The Chapter 13 proceeding at issue was not Brown's first, and to understand the

bankruptcy court's decision, the history of Brown's proceedings is necessary.

### A.  First Bankruptcy Case

Represented by counsel, Brown filed a previous Chapter 13 petition on June 11, 2015 in

the United States Bankruptcy Court for the Eastern District of Virginia. See Murphy Brown v.

Gorman, No. 1:15-cv-01265, 2016 WL 3702974, at *1 (E.D. Va. July 7, 2016). In her initial

Schedule A disclosure of real property Brown listed an ownership interest with her husband,

Jeffery L. Brown, as tenants by the entirety in her residence on Barbara Lane in Fairfax, Virginia

("the property"), which she valued at $900,000, and against which she reported a secured debt of

$1.2 million. Id. Brown's Schedule D disclosure of secured creditors listed the $1.2 million debt

as owed to HSBC Mortgage ("HSBC"); however, that debt was marked as "contingent" and

"disputed." Id. In Section 5A of the proposed Plan, Brown proposed to cure what she listed as

the estimated amount owed to HSBC, $162,000, for mortgage arrearage, although in Section 6A

she sought rejection of HSBC's claim on the ground that it was based on an executory contract

and in Section 7B she sought avoidance of HSBC's security interest in the property on the

ground that she had rescinded the mortgage loan under the Truth in Lending Act ("TILA"). Id.

Brown proposed making a $3,000 monthly payment to the Trustee "as a show of good-faith,"

with the condition that it should be disbursed only "after the resolution of the debtor's adversary

proceeding yet to be filed." Id. That $3,000 bore little relation to the actual monthly mortgage

payment required by the Note, which as of June 2015 was apparently $7,514.40 per month. Id.

After the initial meeting of creditors, the Trustee filed a Motion to Dismiss with Prejudice

and an Amended Objection to Confirmation of the Plan, primarily arguing that Brown was not

eligible for relief under Chapter 13 because her secured debt exceeded the $1,149,525 limit set

under 11 U.S.C. § 109(e). Id. The Trustee further contended that Brown's Chapter 13 petition

was not filed in good faith, as evidenced by the Plan's failure to assert a credible means of

reorganizing Brown's finances, supporting the inference that her sole intent was to use the

automatic stay to prevent foreclosure proceedings while she and her non-debtor husband

challenged the validity of the mortgage note. Id.[1]

---

[1] Brown's husband filed a complaint against HSBC in this court in 2010, alleging that HSBC
committed fraud, and violated the Truth in Lending Act with respect to the same Note at issue in
Brown's bankruptcy proceedings. See Brown v. HSBC Mortg. Corp., No. 10-cv-, 2011 WL
3101780 (E.D. Va. July 22, 2011). The complaint was dismissed with prejudice for failure to

On September 2, 2015, after the Motion to Dismiss was filed, Brown amended her Schedules A and D by reducing HSBC's secured mortgage claim to $1,078,513.03, which she continued to describe as "contingent," "unliquidated," and "disputed." Id. at 2. The new lower principal balance appeared to be based on Brown's misreading of a Notice of Payment Change filed by HSBC on July 20, 2015, which reflected what the principal balance would have been had Brown and her husband adhered to their contractually required mortgage payments up to the date of the Notice. Id. The evidence in the record demonstrated that Brown's description of this reduced amount of the secured mortgage claim was not offered in good faith, as her bankruptcy counsel had received correspondence from HSBC's counsel more than a month before Brown filed her Chapter 13 petition advising that the payoff on Brown's mortgage loan was actually $1,528,038.81 as of April 7, 2015. That amount consisted of a $1,232,745.11 principal balance on the mortgage, $215,773.93 in accrued interest, $67,371.46 in escrow advances, and other fees and penalties. Id.

On September 3, 2015, the bankruptcy court held an evidentiary hearing on the motion to dismiss in which Brown admitted that she and her husband took out a mortgage in the amount of $1,265,000 from HSBC on June 27, 2008 and signed a corresponding promissory Note. Id. She and her husband made the required monthly payments for 21 months, but ceased making payments in March 2010 when they sent notice to HSBC that they were rescinding the loan. Even though the Browns did not pay any of the remaining loan balance, Brown asserted that the notice of rescission meant that they did not "owe a dime." Id. In response to the bankruptcy

---

state a claim, and the court put Brown's husband on notice that sanctions would be imposed for any future frivolous claims. Id. at *6. Additionally, the Trustee pointed out that Brown's spouse had unsuccessfully litigated the validity of the Note in state court. See Murphy Brown, 2016 WL 3702974 at *1.

court's questioning, Brown confirmed that she had no assets in her bank accounts and that

neither she nor her husband were able to raise over a million dollars within the next two months,

which the bankruptcy court deemed to be the outer limit of the reasonable time in which a

borrower must tender a rescission payment. Id.

The bankruptcy court ruled orally at the conclusion of the hearing[2] that Brown must be in

a position to refund the unpaid balance of the mortgage loan to the lender for a rescission to be

effective because a rescission returns the parties to the same position they were in ab initio. Id.

Accordingly, the bankruptcy court found that Brown's attempted rescission was not effective

because she had not shown the ability to repay the loan, and she remained obligated on the Note.

Id. Moreover, the court found that the mortgage arrearage plus accrued interest combined with

the unpaid principal balance of the Note placed the amount of secured debt above the statutory

limit for Chapter 13 proceedings. Id. Lastly, the bankruptcy court found that Brown did not file

her Chapter 13 petition in good faith as her sole purpose in filing was to postpone the collection

rights of the mortgage lender. Id. In light of these findings, the bankruptcy court granted the

Trustee's Motion to Dismiss and ordered Brown's Chapter 13 case dismissed without prejudice.[3]

See In re Brown, 538 B.R. 714, 721 (Bankr. E.D. Va. 2015).

---

[2] This ruling was supplemented by a Memorandum Opinion entered on September 21, 2015 in
which the bankruptcy court fully explained his reasoning. See In re Brown, 538 B.R. 714 (Bankr.
E.D. Va. 2015). In particular, he carefully explained how he calculated the principal amount due
on the Note, why the debt had not been rescinded, why conversion of Brown's Chapter 13
proceeding to a Chapter 11 proceeding would be futile, and the reasons for concluding that
Brown's first Chapter 13 petition was filed in bad faith. Id. at 717-20.

[3] The dismissal was without prejudice to allow Brown "the ability to come back and file a
Chapter 11" if she could do so in good faith; however, the bankruptcy court declined to convert
the Chapter 13 petition before it into one under Chapter 11, instead dismissing it because of the
bad faith of the debtor. See Hearing Transcript at 79-81, In re Brown, 538 B.R. 714 (Bankr. E.D.
Va. 2015) (No. 15-12027-KHK).

Proceeding pro se, Brown appealed that decision, arguing that the bankruptcy court erred in finding that she had not filed her Chapter 13 petition in good faith and in concluding that the amount of the secured debt exceeded the statutory debt limit of $1,149,525.00, thereby rendering Brown ineligible for relief under Chapter 13. Murphy Brown, 2016 WL 3702974, at *2.

After full briefing by the parties, this Court affirmed the bankruptcy court's order, finding that:

- "The bankruptcy court did not err in finding that Brown never effectively rescinded the loan because she ignored her tender obligation to restore the lender to the same position it was in before the transaction." Id. at 3.
- "[T]he bankruptcy court accurately calculated the principal balance due as of April 1, 2010 as $1,217,394.45 based on the original loan amount of $1,265,000, which was a 30-year note with a prime interest rate plus a margin of 2.25%, and applying the payments that had been made. Id. In addition, the bankruptcy court properly calculated interest accrued on the loan from March 1, 2010 through the petition date as $141,500 based on the minimal rate of 2.25%. Id. In light of these findings, even excluding consideration of accrued interest, late fees and penalties called for in the Note, the principal balance exceeded the statutory limit for secured debts under § 109(e), rendering Brown ineligible for Chapter 13 bankruptcy relief." Id. at 4.
- "[T]he bankruptcy court correctly found, Brown's Plan was filed in bad faith because '[i]n reality, the debtor simply s[ought] to obtain the benefit of the automatic stay while she litigate[d] or negotiate[d] with the lender.'" Id. at 5 (citing In re Brown, 538 B.R. at 720).

That decision was summarily affirmed in a per curiam opinion by the Fourth Circuit. Brown v. Gorman, 680 F. App'x 242, 243 (4th Cir. 2017).[4]

### B. Second Bankruptcy Case

Nineteen months after filing her first Chapter 13 petition, Brown filed the Chapter 13 petition at issue in this appeal, again represented by counsel. Trustee Br. at 3 [Dkt. No. 9]. Since her first Chapter 13 petition, the applicable limit for secured debt under Section 109 increased to

---

[4] Brown appealed the Fourth Circuit's affirmance to the Supreme Court, which denied her petition for a writ of certiorari on October 2, 2017. See Brown v. Gorman, No. 16-1899 (S. Ct. Oct. 2, 2017).

$1,184,200. See 11 U.S.C. § 104. Brown's new debtor's schedule indicated that the property had

risen in value to $1,502,040 and her new proposed Plan provided for the payment of the debt

from the sale of the property with any potential deficiency paid out of her household income over

the 5-year Plan period. Brown Br. at 5 [Dkt. No. 8]. Brown listed her monthly household income

as $19,521.48, an increase from the income of $15,788.00 in her initial filing. Id. In addition, her

monthly net income was reported as $7,181.48, up from $2,528 listed in the first Chapter 13. Id.

at 5-6.

HSBC objected to Brown's proposed Plan on the grounds that it included no provision

for the accurate payment of arrearage owed to HSBC and asserting that HSBC anticipated filing

a Proof of Claim with pre-petition arrearages due in the approximate amount of $632,339.91.

Appx. 155.

The Trustee filed an objection to the Plan and a motion to dismiss. The objection asserted

that the Plan was again filed in bad faith and was infeasible because the debtor's schedules did

not demonstrate Brown's ability to make the tender payment. Appx. 157-58. The motion to

dismiss cited to the previous proceeding in which Brown had been adjudicated ineligible for

Chapter 13 relief and the affirmative finding of bad faith. Appx. 160. Specifically, the Trustee

argued that "[r]e-filing this case as a Chapter 13 while cognizant of those rulings can only be

deemed an act of bad faith which warrants dismissal with prejudice, including in rem relief as to

the subject real estate." Id. The Trustee also argued that Brown was in material default for having

"made only one Plan payment since the date of filing on January 18, 2017." Appx. 161.

Brown filed oppositions to HSBC's and the trustee's objections to the Plan as well as to

the Trustee's motion to dismiss, emphasizing that the property had gone up in value, rendering

her able to tender the amount due in rescission once the property was sold, and pointing to the

6

increase in household income which she claimed made her capable of making any payments that might be necessary to cover a shortfall from the sale of the property. Appx. 177-80. Brown also argued that, unlike in the prior Chapter 13 proceeding, the new Plan did propose paying the lender the tender amount due, which she characterized as $1,134,135.4, despite the finding in the first Chapter 13 proceeding that the amount due was at least $1,217,394.45. Id; see also In re Brown, 538 B.R. at 717 (calculating the principal amount due).

The bankruptcy court issued a summary Order of Dismissal with Prejudice, explaining that "from the allegations of the Trustee upon his request for dismissal, with prejudice, and his argument thereon before this Court, and from the record of the proceeding and the prior proceedings of the Debtor(s) before this Court that cause exist[s] for this dismissal to be with prejudice." Appx. 196.

Brown's counsel timely filed a notice of appeal, raising two issues in her appeal brief:

1. Whether the Bankruptcy Court erred in dismissing this Chapter 13 case given that this case was filed over 19 months after a prior dismissal without prejudice to refiling and where Debtor's financial situation, including her ability to tender, had changed since the last dismissal.

2. Whether the Bankruptcy Court erred in disallowing conversion to Chapter 11 given that this case was filed over 19 months after a prior dismissal without prejudice and where Debtor's financial situation, including her ability to tender, had changed since the last dismissal.

Brown Br. at 1. The Trustee has filed an opposition brief, to which Brown declined to reply.

## II.    DISCUSSION

A. Standard of Review

A district court "may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The district court "review[s] the bankruptcy court's legal conclusions de novo and its factual findings for clear error." In re Hartford Sands Inc., 372 F.3d 637, 639 (4th Cir.2004); see also Fed. R. Bankr.

P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). "In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and de novo review to the legal conclusions derived from those facts." In re Phinney, 405 B.R. 170, 175 (Bankr.E.D.Va.2009) (citing Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir.1996)). A bankruptcy court's discretionary decisions are reviewed for abuse of discretion. In re Morris, 385 B.R. 823, 828 (E.D. Va. 2008).

B. Analysis

### 1. Chapter 13 Dismissal

Brown argues that because she is currently able to tender the amount of the debt (based on her unsubstantiated valuation of the property), the bankruptcy court's reasons for dismissing the first Chapter 13 proceeding should not apply to her second Chapter 13 petition. According to her characterization of the first case, "[t]he published opinion in the prior case is clear that the reason the debtor could not address the rescinded loan in a Chapter 13 proceeding was her apparent inability to tender the net loan proceeds because the property was underwater, a fact that was no longer present at the time the current case was filed." Brown Br. at 7. As the discussion of the first Chapter 13 proceeding demonstrates, this argument grossly mischaracterizes the basis for the bankruptcy court's decision in the first Chapter 13 proceeding and the basis for the current dismissal.

In the first Chapter 13 proceeding the bankruptcy court held that it did not matter "whether the claim is a secured claim or an unsecured claim . . . Either way, the amount of the

claim exceeds the applicable limit," [5] therefore, any discussion of rescission was not relevant to

the finding that Brown was ineligible for Chapter 13 protection. Instead, the discussion of

rescission related to "whether the case should be dismissed or the debtor be given time to

consider conversion to chapter 11." In re Brown, 538 B.R. at 718. As to Brown's eligibility for

Chapter 11 relief, the bankruptcy court concluded that she was not eligible because she could not

formulate an effective chapter 11 plan and because the Chapter 13 petition was filed in bad faith.

Id. The court explained that "[a] chapter 11 plan based on a March 2010 rescission of the

transaction [would] not work" because Brown could not tender the required payment due to

Brown and her husband having no savings and owing more on the house than it was worth. Id. at

720. In addition, the court found that Brown did not have the ability to cure the mortgage

arrearage in a Chapter 11 plan. Id. As to bad faith, the court concluded that the proposed Plan

was illusory and offered no realistic proposal for repaying the lender but merely sought to obtain

an automatic stay for purposes of negotiating with the lender. Id. at 721.

The bankruptcy court did not err in finding that the issues which led to dismiss Brown's

first proceeding applied equally to the instant one. As the Trustee points out, this new Chapter 13

proceeding "involves the same real property; the same mortgage lender; and, the same assertion

of rescission." Trustee Br. at 8. The current value of the property is immaterial because "the

eligibility limits are set based on the amount of the debt, and not the value of the asset." Id. at 10;

---

[5] Section 109(e) of the Bankruptcy Code sets both an unsecured and secured debt limit for
Chapter 13 petitions. If the amount of an individual's debt is over the limit, that person may not
be a debtor under Chapter 13. 11 U.S.C. § 109(e). The dollar amount of the debt limit is adjusted
every three years to reflect changes in the Consumer Price Index for All Urban Consumers. See
11 U.S.C. § 104. At the time of Brown's first bankruptcy proceeding, the applicable debt limit
for unsecured debts was $383,175, and the debt limit for secured debts was $1,149,525. See id. §
109(e) (2013). Because the bankruptcy court calculated the principal balance of Brown's debt as
$1,232,745.11, she was found to be ineligible for Chapter 13 regardless of whether her debt was
secured or unsecured. See In re Brown, 538 B.R. at 718.

see 11 U.S.C. § 109(e). Irrespective of the value of the property, according to this Court's

finding in the prior appeal, the principal balance on Brown's mortgage as of April 1, 2010 was

$1,217,394.45, which exceeds even the current slightly higher $1,184,200 debt limit under 11

U.S.C. § 104. Brown does not contend that she made any payments toward the mortgage

between when the debt was calculated in the prior case and the filing of her current case;

accordingly, the principal balance continues to exceed the statutory debt limit to be eligible for

relief under Chapter 13, a fact her counsel should have understood before he filed the new

petition.

Despite a clear holding to the contrary, Brown argues that in the first Chapter 13

proceeding, the bankruptcy court "found that the debtor enjoyed the extended right of rescission

and had timely exercised that right" and, based on the prior adjudication that the "loan had been

rescinded . . . the net loan proceeds was all that she owed to the creditor." Brown Br. at 10-11. In

fact, the bankruptcy court plainly found that Brown's rescission was not effective because she

had failed to demonstrate that she had the ability to tender within a reasonable period of time.

That decision was affirmed by this Court and again by the Fourth Circuit, leaving no conceivable

basis on which to assert that the loan had been rescinded. See Murphy Brown, 2016 WL

3702974, at *3-4.

Brown also argues, in clear contradiction of this Court's earlier ruling, that the tender

amount is $1,131,134.14 and therefore falls below the statutory limit for Chapter 13, Brown Br.

at 11. This meritless argument strongly supports the conclusion that Brown has filed this second

Chapter 13 petition in bad faith purely to avail herself of the automatic stay. As asserted by the

Trustee, Brown's use of the bankruptcy proceedings and her appeal appear "to continue attacks

on the lender (which attacks had previously been unsuccessfully advance[d] by her co-debtor

husband) rather than as genuine attempts to reorganize or repay her debts." Trustee Br. at 12. In

sum, there is ample support for the bankruptcy court's conclusion that, as before, this proceeding

was filed in bad faith, as it clearly is inconsistent with the prior rulings of the bankruptcy court,

as well as the decision of this Court which was affirmed by the Fourth Circuit.

### 2. Conversion to Chapter 11

A bankruptcy court may convert a Chapter 13 petition to a case under Chapter 11 "at any

time before the confirmation of a plan under section 1325 of this title, on request of a party in

interest or the United States trustee and after notice and a hearing." 11 U.S.C. § 1307(d). A

debtor does not have an absolute right to convert to Chapter 11; rather, the authority to convert a

bankruptcy case under § 1307(d) is vested in the discretion of the bankruptcy court. See

Marrama vs. Citizens Bank of Massachusetts, 549 U.S. 365 (2007); In re Mitrano, 472 B.R. 706,

708 (E.D.Va.2012).[6]

As a threshold matter, there is no evidence in the materials presented in this appeal that

any party requested a conversion of this Chapter 13 proceeding to a Chapter 11 proceeding. The

Trustee's motion to dismiss was made under § 1307(c), Appx. 160-61, which allows a

bankruptcy court to either dismiss a case or convert it to a Chapter 7 proceeding. That statutory

provision does not permit a conversion of a Chapter 13 petition to a Chapter 11 petition, and the

materials in the appeal appendix from the bankruptcy court do not include any motion made

under § 1307(d), nor does the docket sheet show that any such motion was made. See Appx. 1-6.

Brown's argument appears to be that the bankruptcy court should have given her the opportunity

to consider converting her case to Chapter 11 rather than dismissing the case outright. Brown Br.

---

[6] A debtor has an absolute right to convert a Chapter 13 petition to one under Chapter 7, see 11 U.S.C. § 1307(a); however, Brown does not allege that she requested that her case be converted to a Chapter 7 case.

at 16. Ordinarily, an issue not presented to the bankruptcy court is considered waived, and will

not be heard for the first time on appeal. In re Kroner, 953 F.2d 317, 319 (7th Cir. 1992); In re

Arnold, 869 F.2d 240, 244 (4th Cir. 1989). In exceptional circumstances, a district court may

decide an issue not raised in the bankruptcy court, particularly if the record is clear on the matter.

Kroner, 953 F.2d at 319. Even though it is not clear whether the conversion issue was raised

below, because both sides fully briefed this issue, the Court will address it.

Still relying on the false premise that by sending a notice of rescission she had somehow

converted the mortgage loan to an unsecured debt, Brown argues that "if HSBC's claim for the

tender amount were to be deemed unsecured pushing the Debtor over the Chapter 13 debt limit,

the Debtor should be allowed to convert to Chapter 11." Brown Br. at 16. She then argues that a

Chapter 11 proceeding is feasible because what she describes as "the tender amount of

$134,135.14" would be "met by selling the collateral and paying the shortfall, if any, over a 5-

year period or a similar period as contemplated by the Bankruptcy Code." Id. As with her

Chapter 13 argument, this reasoning is flawed because the tender amount is not $134,135.14; the

unpaid principal alone was $1,217,394.45 as of April 1, 2010. Trustee Br. at 6. Brown did not

submit any evidence or documentation in the bankruptcy court to demonstrate that she would be

able to pay the proper amount of the debt. This failure supports the conclusion that this second

petition was filed in bad faith and that conversion to Chapter 11 would be futile. See Appx. 157-

58.

Brown did not provide the bankruptcy court with any bank statements or evidence to

demonstrate that she would be able to make the required payments, Appx. 157, nor did she

submit any documentation to support the valuation of her real property apart from her own

"arbitrary listings" in her bankruptcy schedules, Trustee Br. at 10. Furthermore, a plan predicated

on funding from a future sale of a debtor's home at an "unspecified time, upon unspecified terms" is not sufficiently feasible to be confirmed. See In re Erickson, 176 B.R. 753, 757 (Bankr. E.D. Pa. 1995); In re Ballard, 4 B.R. 271, 277 (Bankr. E.D. Va. 1980). If Brown's Chapter 13 Plan could not be confirmed for feasibility, a Chapter 11 plan, based on the same financial information, would also be infeasible. Based on this record, which clearly showed that conversion would be futile, and because Brown's second Chapter 13 petition was filed in bad faith, the bankruptcy court did not err by not offering Brown the option to convert her petition to Chapter 11.

### III.    CONCLUSION

For the reasons stated above, the bankruptcy court's Order of Dismissal with Prejudice has been AFFIRMED [Dkt. No. 12]. The same reasons supporting the conclusion that Brown's Chapter 13 Plan was infeasible apply equally to a Chapter 11 petition. Therefore, any claim that the petition should have been converted to a Chapter 11 proceeding is rejected by this Court.

Entered this _10_ day of October, 2017.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge